Good morning. In Sosa v. Alvarez-Machain, the Supreme Court held that, quote, courts should require any claim based on the present-day law of nations to rest on the norm of international character accepted by the civilized world and defined with a specificity comparable to the features of the 18th-century paradigms we have recognized. In this case, the international norms are based on laws prohibiting genocide and crimes against humanity. Both of these norms are accepted by the civilized world and are well defined. Well, the norms are accepted, but the well-defined part is what's the trouble here. Well, let me address that. The concept of gen – well, first, let's talk about crimes against humanity. That has been recognized as a crime now for more than 100 years, dating back to 1907, the adoption of the Hague Convention respecting the laws and customs of war on land. The Genocide Convention dates from 1948, and that has been ratified by the United States. With an understanding that the definition is specific intent to destroy a protected group. Yes, exactly. The point here, Your Honor, is that an ATS claim can either be based upon a treaty or the law of nations. That's right in the ATS. It says treaties, district courts have jurisdiction over claims made by an alien for violation of a treaty or the law of nations. They are different. A claim does not have to be based specifically on a treaty, but rather can be based on customary international law and Jews' covenants. Agreed. Okay. In the Sosa case, the Supreme Court did not establish a rule of law that in order for a claim to be brought under the ATS, the United States must have ratified or acceded to a treaty. As a matter of fact, that was argued by the defense. And I recall in the Ninth Circuit opinion, which you signed on to, that was your view, Your Honor. But the Supreme Court did not accept it. Well, they didn't accept the extreme version of it. That is, they didn't say there can never be a claim pursued through the ATS unless Congress has embraced it. But what they did say was that court shouldn't be usurping congressional legislative judgment. And it certainly is really positive if Congress has embraced it. And I guess the point of my question before is not only has Congress not embraced this as explicitly, as clearly as it can possibly do, said in the one instance where it had direct, you know, dealings with the Genocide Convention, our understanding is that it's defined as requiring specific intent. Okay. And I think it's clear that the United States and the Congress have embraced the concepts of prohibiting genocide and crimes against humanity. So the question is the scope of that. And that's where we get into customary international law and Juice Kogans. Both the crimes of crimes against humanity and genocide are customary international law. And they rise to the level of Juice Kogans. Juice Kogans means that such crimes that are so abhorrent and are so condemned by the nations of the world are absolute and cannot be derogated by a particular state. The issue here is, and let's talk about that. What the United States did, for example, with the Rome Statute, basically said they don't want this to be enforceable or provisions of the Rome Statute. Well, we haven't ratified it. The United States has not ratified the Rome Statute, and it does not want certain provisions of the Genocide Convention to be enforceable. Is that because that sort of diluted the concept of specific intent? Did they object to that on that basis? Well, that's the point. The United States can object, but because these laws have, international laws, have achieved customary international law status and Juice Kogans status, it doesn't matter. And that's why the Supreme Court in the Sosa case did not say that in order for a claim to be actionable under the ATS, it has to have been ratified by the United States. That's not required. It just has to be. Then if that were the case, it would read out the international law component of the Alien Tort Statute. It would be redundant surplusage. But it's not. There's treaties and there's international laws. And if the law, if the international law has achieved acceptance by the civilized world, it is a basis for an ATS claim. The concepts here for genocide, the prevention of births, is well established in international law. The United States does not dispute that. Mr. Ressiger, I, we're at such a level of generality, I don't, wouldn't suspect that anybody disagrees with the notion that genocide is universally condemned. And that's not at issue here. It's a very, very discreet question. And that is, is that understanding one that prohibits someone acting specifically intending to destroy a protected group? That's, is that the understanding? Or is the understanding, well, you can't take action knowing that the consequences of that action may have the effect of destroying a protected group? Okay. I would suggest we look back to Nuremberg. The United States was a major advocate of the trials at Nuremberg and also the ad hoc tribunals, Rwanda and Yugoslavia. And the lead, the main case from Nuremberg, which is closely analogous to this case, is Inrei Tesch. Because Tesch owned a chemical company. It made a pesticide, just like the defendants in this case, and Tesch supplied that chemical to the German government, knowing that they were going to use it to exterminate Jews and gypsies and homosexuals. And help train them, as I recall. Maybe I've got the cases mixed up. They also helped train the people who were administering the. That is true. However, the opinion in Inrei Tesch was not based on that fact, Your Honor. The rationale for the decision was that because the company provided this toxin to another, knowing that it would be used to commit a genocidal effect, that that was a crime against humanity which was punishable. And, in fact, Tesch was executed. I may have the cases mixed up, but wasn't that a war crimes case? These were war crimes, yes. Well, you don't have to have specific intent. So that's just not a relevant consideration. Well, I disagree. And we've briefed at great length that war crimes do require specific intent. I know the defendants argued that in their papers, but we extensively briefed that. I could direct the Court. Oh, I read it. Okay. From our review of all the different crimes, war crimes, they do require specific intent. And we've cited several in our brief. The Rome Statute is the most current expression of international law. And the Rome Statute has the intent, establishes an intent standard which is directly taken, really, from the Tesch case. That is an expression of international law. It's been widely adopted. The tenth anniversary of the Rome Statute was yesterday. And, very simply, that is made enforceable by the ATS. It does not require congressional ratification or accession to be made enforceable. The ATS did that 200 years ago. I think that's the essence. Now, I guess I should reserve my remaining time for you. Certainly. Good morning, Your Honors. My name is Ed Woodson. I am here on behalf of the appellees. I'm almost tempted to do what I advise young lawyers to do when the point's already been made, and that is to sit down and shut up. But I'm going to resist that, at least for a few seconds, Your Honors. You know what? You've just given yourself some very good advice. I'm going to heat it in about a minute, unless you have any questions. Quite frankly, the arguments advanced by appellants simply have no basis anywhere, in fact. The notion that somehow SOSA stands for the proposition that a treaty that has not been ratified by the United States is nonetheless enforceable in federal courts in the United States is exactly the opposite of what SOSA was talking about. In that case, they were talking about a political covenant, which had been ratified as an international treaty, but had been ratified on the express condition that it was not self-executing in the United States. This case is even stronger. There is no case anywhere that has held that a claim under the Alien Tort Claim Statute can be found to exist where the Congress has specifically rejected the treaty. Judge Hall wrote that a number of years ago in the Marcus case. There must be a recognition of the right by the United States. No one's arguing that there are valid international norms. No one's arguing that there are situations where claims under the Alien Tort Claim Statute can be asserted. But this isn't it. This is a case where, as both Judges Anderson and Judge Wu found, on both the genocide ground, that is to say, the absence of specific intent, as Your Honor correctly pointed out, being a requirement, not to mention the absence of any attack upon a protected group. Secondly, with respect to crimes against humanity, which wasn't addressed, again, the court below there found a total absence of state action or any state actor. There's no claim, nor can there be a claim, that somehow the corporations in this case provided that requirement by exercising de facto control over the territory in question. So on both of those grounds, there's simply no basis for this claim to proceed. And whether they're in state or federal court, these cases are products cases and they ought to be treated as such. If Your Honors have questions, I'm perfectly happy to answer. Otherwise, I'll follow my initial advice.  Thank you, Your Honor. I would like to reply briefly regarding the specific intent issue. In this case, the complaint does allege specific intent. And we are here on a motion to dismiss on the pleadings and also a motion for judgment on the pleadings, a procedural background. But there are certain facts alleged. Number one, that Shell's toxicologist as early as 1964 was referring to DBCP as a male birth control device. Secondly, that Shell had discussions when it was banned in the United States that perhaps we need to reevaluate our concept of this chemical and not treat it as a pesticide. But rather treat it as a drug and exploit its potential for use as a male birth control device in third world countries. And thirdly, there was Clyde Macbeth, Shell's manager, who made this chemical, who said, from what I hear, a little birth control down there won't hurt them. So based upon those facts which are pled, I believe there is sufficient evidence of specific intent. And when he made those statements, was he referring to the current case or to a different case in a different global part of the world? At that point, he was referring to no cases had been filed at that point. I think the specific reference that he was referring to there was Nicaragua as opposed to the Ivory Coast. But the intent was clear that these companies thought that it would be appropriate, although this chemical had been banned in the United States, because all the production workers at all the facilities became sterile, they thought it would be fine to ship this abroad to third world countries, knowing that these indigenous plantation workers would be exposed to it without any protections, that they would become sterile. And that was a fine thing because third world population control was a good thing. That is intent. Those facts are pled. I don't think that can be ignored. So even if there is a specific intent requirement, because Congress has been recalcitrant in signing on board to the intent recognized by the United States Supreme Court in Bailey, which the defendants are relying on. In other words, the knowledge of the inevitable consequence, even so, with those facts, I think we have alleged sufficient facts to establish specific intent, and that should be allowed to proceed. It states a claim. Thank you, Your Honor. Thank you, Mr. Metzger. Thank you, counsel. Thank you.
judges: Hall, Rymer, McNamee